## Robinson v. Commonwealth.

(Decided May 19, 1936.)

C. A. NOBLE for appellant.

B. M. VINCENT, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Reversing.

Arnold Robinson has been convicted and sentenced to life imprisonment for the murder of Andy Spencer and by this appeal is seeking a reversal on the following grounds: (1) Incompetent evidence admitted over his objections; (2) error in instructions and in failing to give the whole law of the case; (3) misconduct of the commonwealth's attorney in making prejudicial statements in the closing argument before the jury; (4) that the verdict is not authorized by law and is flagrantly against the evidence.

Since the judgment must be reversed on the third ground, we shall first discuss the other three in the order indicated, but in so doing it will not be necessary to enter into an extended statement of the evidence.

The homicide occurred at the home of John Robinson, a brother of appellant, at Wabaco, near Hazard, in Perry county. The evidence shows that Lula Robinson was the wife of John Robinson and they had four children. There is also evidence by a number of witnesses that she had been married to deceased and at intervals they had lived together. Deceased often visited their home, but usually on occasions when John Robinson would be away at work at the railroad shops.

Deceased left home very early in the morning on the day of the homicide, saying to his sister and brother-in-law with whom he lived that he was going to see Lula Robinson, and according to their evidence had a silk dress and a pair of house slippers which he said he was taking her. He arrived at the Robinson home about 6:30 or 7 o'clock and remained there until he was killed some time near 3 in the afternoon. Two officers testified for the commonwealth that appellant admitted he shot deceased, but that he had to shoot in defense of himself. He also told them that he had taken deceased's pistol and where he had hidden it under a stump on a mountain top and went with them and others to the spot indicated where the pistol was found.

It is most earnestly maintained by counsel· for appellant that this evidence was procured in violation of what is known as the Anti-Sweating Act, section 1649b-1 et seq., Kentucky Statutes. However, the evidence of the officers is to the effect that appellant made these statements voluntarily, and appellant upon taking the stand admitted all the officers testified to and did not deny or indicate that the statements were made under threats or duress or in any way that would bring them under condemnation of the act in question. It is therefore quite apparent that no error was committed in this particular.

The only criticism leveled at the instructions is that they do not submit the right of appellant to shoot in defense of his sister-in-law, Lula Robinson, or of the home of his brother, John Robinson. He was merely a guest at their home and there is absolutely no evidence that he was repelling a forcible entry or of any threatened damage to the home. There is likewise a total absence of any evidence indicating that it was necessary or that he did in fact act in defense of his sister-in-law. It is therefore obvious that the court did not err in not giving the instruction contended for and the instructions given were correct in every detail and properly submitted the issues to the jury.

While appellant was the only eye-witness to the tragedy who testified, there is direct as well as circumstantial evidence sufficient to warrant the submission of the case to the jury and to sustain the verdict.

The other ground presents such flagrant misconduct upon the part of the commonwealth's attorney as to impel a reversal. According to the evidence of appellant, deceased, without sufficient or any provocation or excuse, fired a shot at him under circumstances that would clearly indicate a murderous intent. Appellant thereupon fired four shots, some of which took effect and resulted in practically instantaneous death. A man and wife, who live within about thirty yards of the Robinson home and who were at home at the time the homicide is shown to have occurred, stated that they did not hear any shots or anything unusual at the Robinson home. Another neighbor who lives across the street or road testified to the same effect. Two witnesses for appellant, who were in the vicinity, but not so near the house, testified that they heard five shots fired, the first being louder than the four following. While there is some conflict between the evidence of appellant and these two witnesses concerning the shooting and especially as to the time it occurred, their evidence would strongly tend to corroborate him concerning the shots fired, so it is at once apparent how vital this evidence was to his defense. In his closing argument, the commonwealth's attorney said:

"Gentlemen of the jury: I have been all over that place, and talked to everybody down there, and there is no one down there that heard the shots fired (referring to the shots that the defendant claimed were fired by the deceased) they have told me so, so you see that the defendant and his witnesses are lying about the way the shots were fired."

Proper objection was interposed to this argument but was overruled by the court and appellant saved exceptions. It will thus be seen that the commonwealth's attorney went far beyond the bounds of legitimate argument and discussed matters entirely outside the record. There was no evidence in the record and nothing to be inferred therefrom on which to base his statements concerning his personal investigation in the community where the homicide occurred. He in effect made of himself a witness for the commonwealth and made statements which because of incompetency he would not have been permitted to make had

he been called and sworn as a witness. So much has been written concerning the duties of a commonwealth's attorney to one standing accused of crime as well as to the commonwealth that anything said with regard thereto would be mere reiteration. Time and again this court has attempted to define the bounds of legitimate argument, and notwithstanding repeated censure and condemnation of transgression of these bounds, the disregard for them apparently has been no less frequent. Where the evidence has been clear and convincing of guilt and no other error appeared in the record, this court has often affirmed convictions, notwithstanding some misconduct on the part of the commonwealth's attorney in the argument of the case, on the grounds that it was not prejudicial to the substantial rights of the accused. Some have apparently regarded this as license for unbridled, intemperate, and unwarranted argument in utter disregard of ethics and proper and orderly administration of justice. In the proven circumstances and with such a sharp conflict in evidence, the statement of the commonwealth's attorney as to the result of his investigation and the statements made to him by others was highly improper and prejudicial. Such conduct whether springing from zeal, heat of argument, or willful prompting cannot be too severely condemned, since it is in violation of the rights guaranteed to one standing accused of crime; is calculated to bring reproach upon courts of justice with resultant delay and unnecessary, additional costs in the enforcement of penal laws.

For the reasons indicated, the judgment is reversed and cause remanded for new trial and proceedings consistent with this opinion.