## Hammonds v. Commonwealth.

January 21, 1947.

Lewis & Weaver for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Cammack—Affirming.

Velty Hammonds was jointly indicted with Bill Bruner for the murder of Bob Philpot, age 65. Upon his separate trial Hammonds was sentenced to prison for life. On Sunday, March 24, 1946, Philpot's body was found lying across the foot of his bed. The rear of his skull had been crushed and he had been struck across the forehead. There is some evidence showing that he had been robbed and his glasses stolen, but we are concerned only with the charge that Hammonds and Bruner murdered Philpot. The evidence shows conclusively that Philpot had been struck with a heavy club while in the kitchen adjoining his bedroom. There is evidence also tending to show that his body had been carried from the kitchen and placed across the bed. Hammonds and Bruner were seen near Philpot's home about 1:30 p. m. the preceding Saturday. One witness testified also that he saw them going in that direction about 4:00 p. m. They appeared upon the scene Sunday morning shortly after Philpot's body had been discovered.

The Commonwealth introduced testimony showing that the hoofprints of mules which were found near Philpot's home were the same as those of the mules which the accused were riding Sunday morning. One witness testified that she heard one of the accused say, "Keep your mouth shut," as they were leaving Philpot's home

Sunday morning. When Hammonds and Bruner were arrested by several patrol officers and other officials they were taken to the offices of the state patrol in London. Several of the officers testified that they reached London about 9:00 or 9:30 p. m. One of them said, however, they reached there around 6:30 or 7:00 p. m. The accused were placed in separate rooms and both made confessions. They were not taken to jail until around 11:30 or 12:00 p. m.

Counsel for Hammonds contends that the circumstances and the testimony of the officials show that Hammonds' confession was obtained in violation of KRS 422.110. In support of this contention it is argued that he was plied with questions for a long period of time; he was told it would be best if he made a confession and that the officers had fingerprints which they obtained from a whiskey bottle found near the scene of the crime; no one representing Hammonds was present when the confession was obtained; and the officer who prepared the confession omitted a statement to the effect that Hammonds was innocent. On the other hand, the evidence for the Commonwealth is to the effect that Hammonds was advised of his constitutional rights and that he voluntarily made his confession within a few minutes after he was taken to the patrol headquarters. There was testimony also showing that it took about 50 minutes to prepare the typed statement which Hammonds signed.

On this appeal it is vigorously insisted that it was reversible error to admit the confession because of the manner in which it had been obtained, and also incompetent evidence was admitted.

In his confession Hammonds admitted that he and Bruner went to Philpot's home about 1:30 Saturday afternoon. He said he had about a pint of whiskey and that Philpot had some whiskey and they drank a good part of it and that Philpot gave them some coffee. He said that while he was sitting at the table drinking a cup of coffee, Bruner, a boy under 20 years of age, and Philpot got in an argument and Bruner struck Philpot with a stick of wood and he ran out of the house and got on his mule and that Bruner came out in a few minutes. They then went to the home of Jane Smith, where they stayed about two hours, playing the victrola and

singing. When they left they went to the home of Velty Benges where they had supper and then went on home. The next morning they were on their way to church when they passed Philpot's home and learned that he was dead.

He declined to testify concerning the competency of the statements introduced by the Commonwealth. However, the sum and substance of his testimony is the same as the statements made by him in the confession. He did not say that he was forced to make a confession, or that he was in any manner induced to make it. Furthermore, the same view of the murder was given in both the confession and his testimony. Even if it be conceded that the confession was obtained in violation of KRS 422.110, we fail to see how it can be contended that it was prejudicial to admit it in evidence in view of the circumstances peculiar to this case. In the somewhat similar case of Robinson v. Commonwealth, 264 Ky. 394, 94 S. W. 2d 1004, it was so held.

Objection was raised to testimony relating to a soldier from whom Hammonds said he had purchased a pint of moonshine whiskey in London on the preceding Friday. Some of the questions may have been irrelevant, but they were in no sense prejudicial to Hammonds' substantial rights. One witness testified that footprints near Philpot's home were apparently made by Hammonds' shoes, because of the similarity of size and shape. It is contended that the evidence was incompetent because no exact measurements were made. This contention we deem to be without merit because Hammonds himself admitted that he was at Philpot's home, and, furthermore, it was for the jury to determine the weight of the evidence. It is insisted also that the statement of the witness who said that one of the accused said "Keep your mouth shut" should not have been admitted. This witness first said that Hammonds made the statement, but later said she was not certain who made it, though she knew that Bruner did not make it because he stuttered. Even if it be conceded that the statement should have been excluded, which we do not, we fail to see how its admission could have been prejudicial to Hammonds' substantial rights.

There was ample evidence to support the jury's find-

ing of guilt. Hammonds admitted being in Philpot's home when Bruner struck him, and he was seen going in that direction around 4 o'clock in the afternoon. He did nothing to stop the affray and mentioned it to no one, even after he learned that Philpot was dead. He may have remained silent because he desired to protect his friend Bruner, but his conduct showed brutal callousness after the crime was committed. He went with Bruner to Jane Smith's home, where they played the victrola and sang, then went muleback riding with a girl. And even while he was at the Philpot home when the investigation was being made Sunday morning he still remained silent.

Under the circumstances, we think the judgment should be and it is affirmed.